SECOND DIVISION
FILED: December 12, 2006

No. 1-05-0243

| | | |
|---|---|---|
| IN RE MARRIAGE OF:<br>LENORA ANN MILLER,<br>      Petitioner, | )<br>)<br>)<br>) | APPEAL FROM THE<br>CIRCUIT COURT OF<br>COOK COUNTY |
| v. | )<br>) | |
| HAROLD MILLER,<br>      Respondent. | )<br>)<br>) | |
| ------------------------------------------ | ) | 01 D5 30291 |
| LENORA ANN MILLER,<br>      Plaintiff-Appellee, | )<br>)<br>) | |
| v. | ) | |
| H.E. MILLER, SR.,<br>      Defendant-Appellant. | )<br>)<br>) | THE HONORABLE<br>DANIEL RILEY,<br>JUDGE PRESIDING. |

JUSTICE HOFFMAN delivered the opinion of the court:

The defendant, H.E. Miller, Sr., appeals from a judgment of the circuit court ordering him to pay a $1,172,100 penalty to the plaintiff, Lenora Miller, for knowingly failing to timely remit child support payments withheld from his employee's wages.  For the foregoing reasons, we reverse and remand.

On May 1, 2001, a judgment was entered dissolving the marriage of the plaintiff and Harold Miller.  Pursuant to that judgment, Harold was obligated to pay the plaintiff $82 per week in child support.

On May 8, 2001, an income withholding notice was served upon the defendant pursuant to section 35 of the Income Withholding for Support Act (Act) (750 ILCS 28/35 (West 2004)).  Section 35 of the Act requires an employer, upon receipt of an income

withholding notice, to deduct child support payments from an employee's wages.  750 ILCS 28/35 (West 2004).  The employer must remit the amount withheld to the State Disbursement Unit within seven days of the employee's pay period.  750 ILCS 28/35 (West 2004).  Section 35 of the Act also contains the following penalty provision:

> "If the payor knowingly fails to withhold the amount designated in the income withholding notice or to pay any amount withheld to the State Disbursement Unit within 7 business days after the date the amount would have been paid or credited to the obligor, then the payor shall pay a penalty of $100 for each day that the amount designated in the income withholding notice (whether or not withheld by the payor) is not paid to the State Disbursement Unit after the period of 7 business days has expired."  750 ILCS 28/35(a) (West 2004).

In this case, the defendant was required to withhold $82 per week from Harold's wages and forward that amount to the State Disbursement Unit.

On October 12, 2001, the plaintiff's attorney sent the defendant a letter asserting that the defendant had failed to remit 19 weekly payments of $82. The letter, in relevant part, stated:

> "While it is not the intent of my client to pursue penalties at this time, she does require this money to live. Therefore, timely payments are mandatory."

On March 28, 2002, the plaintiff filed a complaint against the defendant, seeking 25 weeks of child support payments that the defendant allegedly withheld, but failed to timely remit. The plaintiff also sought a statutory penalty of $100 per day pursuant to section 35 of the Act.

In his answer, the defendant raised the affirmative defenses of laches and the unconstitutionality of the Act. The plaintiff filed a motion to strike the defendant's affirmative defenses pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2004)). The circuit court granted the motion in part and struck the defendant's affirmative defense of the unconstitutionality of the Act. The circuit court also struck the affirmative defense of laches for the period after the plaintiff filed her complaint.

On October 26, 2004, the plaintiff and the defendant entered into a stipulation of facts. The parties agreed that, between

April 15, 2002, and October 4, 2004, the defendant withheld 128 child support payments from Harold's wages, but failed to timely remit the payments to the State Disbursement Unit. The parties also agreed that the penalties for the defendant's delay equaled $1,172,100. The circuit court entered a judgment against the defendant for $1,172,100 in statutory penalties pursuant to section 35 of the Act. This appeal followed.

Initially, we address the defendant's argument that the circuit court erred in not applying the doctrine of laches for the period after the plaintiff filed her complaint. Because this matter was disposed of at the trial level in response to the defendant's motion to strike pursuant to section 2-615, the question before this court is whether the defendant's affirmative defense of laches alleged facts sufficient to constitute a legally cognizable defense. Vermeil v. Jefferson Trust & Savings Bank, 176 Ill. App. 3d 556, 566, 532 N.E.2d 288 (1988). The issue presented is a question of law, and, consequently, our review is de novo. Bogner v. Villiger, 343 Ill. App. 3d 264, 268, 796 N.E.2d 679 (2003).

A motion to strike an affirmative defense concedes all well-pleaded facts constituting the defense, together with all reasonable inferences which may be drawn therefrom. In re Estate of Davis, 225 Ill. App. 3d 998, 1000, 589 N.E.2d 154 (1992). An affirmative defense should not be stricken where the well-pleaded

facts raise the possibility that the party asserting the defense will prevail.  International Insurance Co. v. Sargent & Lundy, 242 Ill. App. 3d 614, 631, 609 N.E.2d 842 (1993).

For the affirmative defense of laches to apply, the defendant must allege sufficient facts to establish:  (1) lack of diligence by the party asserting the claim; and (2) prejudice to the opposing party resulting from the delay.  McDunn v. Williams, 156 Ill. 2d 288, 330-31, 620 N.E.2d 385 (1993).  Even assuming a lack of diligence by the plaintiff in asserting her claim, the facts alleged by the defendant do not support his contention that he was prejudiced by any such delay.

In his answer, the defendant alleged that he was "lulled *** into a sense of security" by:  (1) the plaintiff's delay in filing her complaint for approximately one year; and (2) the statement in the October 12, 2001, letter that the plaintiff would not pursue civil penalties "at this time."  The defendant claimed that the plaintiff's actions caused him to believe that the plaintiff would never seek statutory penalties.

Contrary to the defendant's contentions, however, the $1,172,100 penalty imposed in this case was not caused by the plaintiff's delay in filing suit or the statement in the October 12, 2001, letter that civil penalties would not be pursued "at this time."  Rather, the penalty accrued because the defendant knowingly failed to remit child support withholdings in a timely

fashion.  See 750 ILCS 28/35(a) (West 2004).  The defendant, and not the plaintiff, controlled the extent of the penalty.  See In re Marriage of Chen, 354 Ill. App. 3d 1004, 1022, 820 N.E.2d 1136 (2004).  We, therefore, conclude that defendant failed to allege sufficient facts to raise the affirmative defense of laches for the period after the complaint was filed.  Accordingly, the circuit court properly struck the defendant's affirmative defense of laches for that period.

Next, the defendant contends that section 35 of the Act is unconstitutional.  He argues that the $1,172,100 penalty imposed pursuant to this section of the Act deprived him of his property without due process of the law.  The defendant does not assert that the $100-per-day penalty provision provided for under section 35 of the Act is unconstitutional on its face, but only maintains that Act is invalid as applied to him.  Therefore, we consider whether the $100-per-day penalty provision, as applied to the facts of this case, violates due process.

Statutes carry a strong presumption of constitutionality, and the party challenging the validity of a statute has the burden of clearly establishing that it is unconstitutional.  In re Marriage of DeBates, 212 Ill. 2d 489, 509, 819 N.E.2d 714 (2004).  Whenever reasonably possible, the constitutionality of a statute must be upheld.  Ill. State Chamber of Commerce v. Filan, 216 Ill. 2d 653, 661, 837 N.E.2d 922 (2005).  We review the

constitutionality of a statute <u>de</u> <u>novo</u>. <u>People ex rel. Sherman v. Cryns</u>, 203 Ill. 2d 264, 290, 786 N.E.2d 139 (2003).

Under the United States and Illinois constitutions, a person cannot be deprived of property without due process of law. U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2. Although the legislature has broad discretion in prescribing the penalties for violations of its laws, (<u>Missouri Pacific Railway Co. v. Humes</u>, 115 U.S. 512, 523, 29 L. Ed. 463, 6 S. Ct. 110 (1885)), the legislature's power to fix penalties is subject to the requirements of due process. (<u>Waters-Pierce Oil Co. v. Texas</u>, 212 U.S. 86, 111, 53 L. Ed. 417, 29 S. Ct. 220 (1909)). A statutory penalty will survive a substantive due process challenge if it bears a rational relationship to a legitimate government purpose. <u>People v. Farmer</u>, 165 Ill. 2d 194, 207-08, 650 N.E.2d 1006 (1995); <u>Heimgaertner v. Benjamin Electric Manufacturing Co.</u>, 6 Ill. 2d 152, 159, 128 N.E.2d 691 (1955).

If a penalty is grossly excessive, it does not further a legitimate government purpose and constitutes an arbitrary deprivation of property. See <u>State Farm Mutual Automobile Insurance Co. v. Campbell</u>, 538 U.S. 408, 417, 155 L. Ed. 2d 585, 123 S. Ct. 1513 (2003). Accordingly, the due process clause prohibits the legislature from imposing a statutorily created civil penalty "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." <u>St.</u>

Louis, Iron Mountain & Southern Railway Co. v. Williams, 251 U.S. 63, 66-67, 64 L. Ed. 139, 40 S. Ct. 71 (1919). In determining whether a civil penalty is disproportionate and unreasonable, the penalty is not compared to the actual damages sustained by a private party but, rather, to the public wrong the statute at issue is designed to remedy. St. Louis, Iron Mountain & Southern Railway Co., 251 U.S. at 66.

In enacting section 35 of the Act, the legislature sought to provide a simple and speedy method of obtaining payments from the wages of employees owing child support. Dunahee v. Chenoa Welding & Fabrication, Inc., 273 Ill. App. 3d 201, 205, 652 N.E.2d 438 (1995). To ensure compliance, section 35 of the Act imposes a daily penalty of $100 when an employer knowingly fails to timely withhold or remit a child support payment. Dunahee, 273 Ill. App. 3d at 206. On its face, the $100-per-day penalty provision rationally advances the State's legitimate interest in encouraging the prompt payment of child support. However, when compared to the other penalties provided by the legislature for similar misconduct, we cannot conclude that the $1,172,100 penalty imposed in this case is constitutional.

Under the Non-Support Punishment Act, the legislature has authorized a maximum fine of $25,000 for the criminal offense of a spouse's willful failure to pay child support. See 750 ILCS 16/15(d) (West 2004). Thus, the $1,172,100 penalty imposed

against the defendant in this case is approximately 47 times greater than the maximum criminal fine the legislature has found necessary to ensure a spouse's compliance with a child support obligation. The gross disparity between the penalty applied in this case and the maximum criminal fine demonstrates that the $1,172,100 penalty is wholly disproportionate to the defendant's offense and obviously unreasonable. See St. Louis, Iron Mountain & Southern Railway Co., 251 U.S. at 66-67. Consequently, we conclude that section 35 of the Act is unconstitutional as applied to this case.

The defendant's failure to timely remit 128 weekly child support payments over a two-and-a-half year period is hardly exemplary and justifies a penalty. However, the $1,172,100 penalty imposed in this case is unconstitutionally severe. Accordingly, we remand this cause with directions to the circuit court that it hold a hearing to determine an appropriate penalty. See Hale v. Morgan, 22 Cal. 3d 388, 407, 584 P.2d 512 (Cal. 1978).

For the foregoing reasons we reverse the judgment of the circuit court and remand this cause for further proceedings.

Reversed and remanded.

SOUTH, J., concurs.

WOLFSON, P.J., dissenting.

1-05-0243

PRESIDING JUSTICE WOLFSON, dissenting:

This case reminds me of the story about the man who kills his parents and then asks for leniency because he is an orphan.

Yes, $1,172,100 is a severe penalty. Then, again, Miller brought it on himself. I do not agree the penalty violated his right to due process of law. Nor do I agree the trial judge, on remand, has the power to reduce the amount of the penalty.

There is one issue in this case. Miller does not deny he knowingly violated section 35 of the Act. He does not claim he did not know about the penalty, something that would be difficult to claim since the statute was printed on the other side of his income withholding notice. He does not deny that he simply chose to ignore the payment requirement, even though he did withhold the required amounts on occasion. He does not argue the trial judge had discretion to do anything other than what he did or that the amount of the penalty was not mandated by the statute. Nor does he claim he did not have adequate notice of the trial court proceeding or that he was denied the right to challenge the

imposition of the penalty.  He simply says it is too much money to survive a due process challenge.

It is a mistake to give short shrift to the societal interests at stake in this case.  Illinois has a strong interest in preserving and promoting the welfare of children.  "Indeed, it is difficult to imagine a more compelling State interest than the support of children."  People ex rel. Sheppard v. Money, 124 Ill. 2d 265, 227, 529 N.E.2d 542 (1988).

The $100-per-day penalty provision was enacted to ensure a speedy and simply method of withholding wages "in response to the nationwide crisis of delinquent child support."  Dunahee v. Chenoa Welding & Fabrication, Inc., 273 Ill. App. 3d 201, 205, 652 N.E.2d 438 (1995).  The legislature's purpose in enacting a mandatory penalty was to ensure the employer's cooperation with the withholding mechanism.  See Dunahee, 273 Ill. App. 3d at 206-08.

Applying the penalty provision provides an incentive to withhold and send the child support payment in a timely manner, preventing the employer from using the funds for its own financial advantage.  In re Marriage of Chen, 354 Ill. App. 3d 1004, 1016-17, 820 N.E.2d 1136 (2004); Dunahee, 273 Ill. App. 3d at 208-09.  That is, the mandatory penalty serves to compensate the plaintiff for any hardship and would deter future

noncompliance by the employer.  <u>Thomas v. Diener</u>, 351 Ill. App. 3d 645, 651, 814 N.E.2d 187 (2004).

It is important to note the penalty is triggered only by a <u>knowing</u> failure to withhold the funds or to pay them to the State Disbursement Unit.  In <u>Chen</u>, the knowledge requirement was held to justify a $90,600 penalty challenged on due process grounds. See <u>Chen</u>, 354 Ill. App. 3d at 1023.  I agree with the statement in <u>Chen</u>: "***it is the employer that controls the extent of the fine."  <u>Chen</u>, 354 Ill. App. 3d at 1022.

To support its finding that due process was violated here, the majority cites two United Supreme Court opinions--<u>State Farm Mutual Automobile Insurance Co. v. Campbell</u>, 538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003); and <u>St. Louis, I.M. & S. Ry. Co. v. Williams</u>, 251 U.S. 63, 40 S. Ct. 71, 64 L. Ed. 139 (1919).

<u>State Farm Mutual</u> concerned a successful claim that a jury award of punitive damages in a bad faith failure to settle case was so excessive that it violated State Farm's right to due process.  The case before us is not a tort action for damages. It involves a predictable and knowable statutory penalty.  The interests at stake are different.  The methods for assessing penalties are different.  These distinctions were made in <u>Chen</u>, where the court rejected the defendant's argument that <u>State Farm Mutual</u> supported its claim of deprivation of due process.  See <u>Chen</u>, 354 Ill. App. 3d at 1022.

In <u>St. Louis, I.M. & S. Ry. Co.</u>, the railroad claimed an excessive penalty for its rate violation had been imposed. The Supreme Court rejected the railroad's claim that the penalty was unconstitutionally severe and excessive "when it is considered with due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence to established passenger rates..." <u>St. Louis, I.M. & S. Ry. Co.</u>, 251 U.S. at 67, 40 S. Ct. at 73, 64 L. Ed. 2d at 141.

The majority, in what sounds more like an equal protection argument, observes that the Non-Support Punishment Act (750 ILCS 16/15(d) (West 2004)) authorizes a maximum $25,000 fine for the criminal offense of a parent's willful failure to pay child support. True, but the point eludes me for two reasons. First, the statute also provides jail sentences for violation of its provisions, establishing a Class A misdemeanor and a Class 4 felony, depending on the circumstances. Second, it makes good sense not to impose a large fine on the parent when the first priority is to obtain funds for the support of the child.

The majority remands this case with instructions that the trial court hold a hearing to determine an appropriate penalty. I have sympathy for the trial court. How is it going to change the terms of a mandatory statute? It cannot. Nor can we. See <u>Michigan Avenue National Bank v. County of Cook</u>, 191 Ill. 2d 493,

522, 732 N.E.2d 528 (2000). Certainly the majority offers no guidance. The citation to an appellate decision in California is not helpful. In <u>Hale v. Morgan</u>, 22 Cal. 3d 388, 584, P.2d 512 (Cal. 1978), the court did direct a trial judge to relitigate the amount a landlord had to pay as a result of wilfully depriving a tenant of utility services. The statute appeared to be mandatory, but the court noted the trial judge could consider the extent to which the tenant was deprived of utility services. The statute in the instant case is mandatory and not subject to such tinkering.

If the majority is correct about the due process violation and if reducing the penalty is not permissible, the statute is compromised. All an employer would have to do to evade any penalty is nothing, as Miller did here. It could pile up the non-payments and, when called to account under the penalty provisions, contend it cannot be required to pay because the mandatory penalty is unconstitutionally excessive. That is, Miller would have to pay no penalty.

I agree the penalty in this case is harsh. But Miller invited it by his indifference to his legal obligations. He virtually created his own due process issue. I don't think we should play into it. I think we should consider that life can be harsh for children who do not receive the financial support they require. I respectfully dissent.